No. 45.—James Coker, plaintiff in error, *vs.* William S. Birge, defendant in error.*

[1.] A livery stable in a city, erected within sixty-five feet of a hotel, is, *prima facie,* a nuisance, and may be restrained by injunction.

[2.] The answer of the defendant, admitting the facts charged in the bill, as to the distance and relative situation of the stable from the tavern, but denying that a livery stable is a nuisance, is mere matter of opinion, and not sufficient to authorize the dissolution of the injunction, before the final hearing.

[3.] Nor will the Court discharge the *ad interim* interdict, so far as to permit the experiment to be made, whether a livery stable could be erected and constructed in such a manner as not to be a nuisance.

In Equity, in Pike Superior Court. Dissolution of the injunction, upon the filing of the answer, by Judge Stark, at Chambers.

The bill alleged that complainant, on 12th day of November, 1850, purchased the Griffin Hotel, situated upon Broad-street, in the City of Griffin, Pike County, for the purpose of keeping open the same as a hotel, to which business it had been appropriated for several years previous; that the defendant, on or about the 20th day of the same month, commenced building, and is now actually proceeding to erect a livery stable, upon a lot contiguous to that upon which the hotel is situated, and only separated from the hotel itself by some sixty-five feet, and also fronting Broad-street. The bill alleges, that if the defendant is permitted to go on, and complete and occupy the said stable, " the injury to complainant and his family, as well as to his property, will be irreparable, and will inevitably result in the loss of health, comfort and happiness to complainant's family, and in the loss of patronage to his hotel, and in the ruinous diminution in the value of his property; all resulting from the unhealthy effluvia arising from the stable, from the collection of flies therefrom, and the interminable stamping of horses therein, the floor being laid of plank."

*For former decision in this case, see 9 *Ga. Rep.* 425.

Coker vs. Birge.

The bill prayed an injunction to restrain the defendant from erecting the stable.

The Court refused to sanction the bill, which decision was by writ of error, brought up and reversed by this Court, at Macon, February Term, 1851.

The bill was subsequently amended, charging that the defendant kept a jack in his stable, and let him to mares upon the premises, and in view of complainant's hotel; and, also, that the defendant, for the purpose of increasing the volume of manure produced in and about his stable, kept the stalls littered with leaves, thereby increasing the danger to the health of complainant's family and guests, and injuring his property.

In his answer, the defendant admitted all the material facts, upon which the equity of complainant's bill is founded, except that he had removed the plank floor from the stable. He admitted that he kept a jack upon the stable premises, but denied that he had ever, with his consent or knowledge, been let to mares, as charged in complainant's bill; although in his absence, on two occasions, such might have been the case. He denied that the injury apprehended from said stable, by complainant, to the health of his family, and the value of his property, would be realized, and that he intended to take precautionary measures to prevent the same, by sprinkling lime water, keeping the stalls neat and clean, &c.

Upon the coming in of the answer, affidavits being submitted to support the charges and statements in both the bill and answer, counsel for defendant moved to dissolve the injunction, which motion was sustained by the Court, and counsel for complainant excepted.

Moore & Alford, for plaintiff in error.

McCune & Ezzard, for defendant.

*By the Court.*—Lumpkin, J. delivering the opinion.

This was an application to Judge *Stark*, at Chambers, to dissolve an injunction.

Coker *vs.* Birge.

[1.] The bill states, that the complainant, James Coker, became the proprietor of the Griffin Hotel, on Broadway, in the City of Griffin, on the 12th day of November, 1850; that the property is chiefly valuable from the fact of its being a hotel, and that it has been occupied and kept for that purpose since the year 1843, and that such was complainant's object in purchasing the property—the value of which is estimated at $3000 per annum. The bill charges, that the defendant, William S. Birge, about the 20th of November, 1850, commenced building a livery stable, with a plank floor, on a lot immediately west, and adjoining the premises of the complainant, which the defendant bought after the complainant went into the possession of the hotel—the said stable fronting Broadway, and running back parallel with the tavern—the object of the defendant being to keep and board horses.

The bill further alleges, that the defendant is keeping a jack in said stable, or on the stable lot, and that he permits him to be tried and let to mares on the premises, within view of complainant's guests, and of complainant himself and his family, from their apartments in the hotel. It further states, that with a view to increase the quantity of manure to be produced from the stable, the defendant is in the habit of littering the stalls with leaves, and complains that if the defendant be allowed to complete the buildings and appropriate them to the purposes contemplated, that the injury to the complainant and his family, as well as his property, will be irreparable; that it will result in the loss of health and comfort and patronage, and in a ruinous depreciation of the value of complainant's property, in consequence of the unhealthy effluvia that will arise from the stable and grounds, the collection of swarms of flies, and the interminable stamping of horses therein, and from the indecent noise and exposure of the jack; and that complainant requested the defendant to desist from erecting said stable and using it for the purposes stated, which he refused to do.

The answer admits the purchase and occupancy of the tavern by the complainant, the object for which it was bought, and the previous use to which it had been applied, and the relative

distances and boundaries of the two lots. It denies that the hotel is as profitable as it is represented to be in the bill. It admits, also, that subsequent to the purchase of the hotel by the complainant, the defendant became the owner of the adjoining property, and that he is building a livery stable thereon, with a view to appropriate it to that business. It admits that the front room in the stable, used for the transaction of business, and keeping of harness, and some ten or twelve stalls contiguous thereto, were originally floored with plank, but states that the plank has been entirely removed from the stalls since the filing of the bill. It denies that a livery stable will produce sickness, if kept as the defendant designs keeping this—that is, to remove the manure and leaves daily, and cause lime water to be sprinkled in the stalls, and this he considers an entire preventive against disease, as well as offensive smells. It also denies that swarms of flies will be generated, as complainant professes to apprehend, and asserts that so far from the stable's diminishing the value of the hotel, by reason of its propinquity, it will increase its custom on that account. It admits that the defendant keeps a jack, but states that he is and will continue to be confined in a dark stable in the most remote corner of the lot, entirely removed from public view. It denies the charge that the jack was tried or let to mares except twice, and then by some hands in the defendant's employ, but alleges that it was done during the casual absence of the defendant, and not only without his knowledge, but contrary to his wishes. It admits that the defendant intends to stand said jack in Griffin, but declares that he will not try or let him to mares in the stable lot, but intends to provide himself a place, without the corporation, for that purpose. It admits the collection of leaves to be used in littering the stalls, but states that they are permitted to remain there only from one to three days, when they are carefully and entirely removed, so as to create no inconvenience or annoyance whatever. It admits that the complainant spoke to the defendant on the subject of erecting the livery stable, and remonstrated against it, but denies that it was done in a spirit of kindness and good neighborhood.

At the hearing of the motion, affidavits were read, both to overcome and support the answer. Without adverting to their number, or detailing the contents of each, it may be sufficient to state, that the preponderance of the testimony, medical and otherwise, was against the belief, that the stable would be injurious to health, especially if kept in the manner promised by the defendant.

Judge *Stark* dissolved the injunction, on the ground, that the equity of the bill had been entirely sworn off by the defendant's answer, and that the answer had not been overcome by the depositions taken for that purpose; and counsel for complainant excepted.

[2.] After bestowing more than ordinary reflection upon this case, our judgment is, that the *ad interim* restriction should not have been removed, but should have been continued to the final hearing.

With the exception of the plank floor, all the material facts, charged in the bill, and upon which the injunction was granted, are admitted by the answer. It is true, that the evils which the complainant says he fears, the defendant insists will not result. At any rate, he maintains that the livery stable can be kept in such a way as to prevent these consequences.

[3.] But to do this requires extreme vigilance on the part of the proprietor. The leaves and manure are to be removed, and the stalls sprinkled with lime water daily. Will this be done? What security has the complainant that this extraordinary care will be bestowed?

If upon the hearing, the Jury should be of the opinion, that this stable with its inmates and attendants, is not a nuisance of itself, but that it may be kept in such a manner as to make it unobjectionable, they will no doubt require by their verdict a decree that the defendant shall enter into bond, with sufficient security, that it shall be kept in this manner, or in some other mode provide adequate protection to the complainant. But this cause may not be tried for several years, and if the injunction is dissolved, what security has Mr. Coker in the meantime?

In *Catlin vs. Volentine*, (9 *Paige*, 575,) the defendant by his

Coker *vs.* Birge.

answer insisted, that he intended to use a *slaughter house* in such a manner that it would not be a nuisance to the complainants ; but the Vice Chancellor refused to dissolve the injunction absolutely, and this decree was affirmed by the Chancellor, who admitted that it was perhaps possible to carry on the business of slaughtering cattle to a limited extent, and in such a manner as not to be a nuisance, but he thought it wholly improbable that any one would incur such cost and labor, under the circumstances. He further remarked, that the answer of the defendant, that his business would not be offensive, &c. *was a matter of opinion merely*, and was not such a denial of the whole equity of the bill, as to the situation of the defendant's building in reference to the dwelling of the complainant, as described in the bill, and which would, *prima facie*, render the occupation of the defendant a nuisance, as would entitle him to a dissolution of the injunction as a matter of course.

So, in the case of *The Burnt Island Whale Fishing Company vs. Trotter*, (5 *Wils. & Sh. Parl. Rep.* 649,) which came before the House of Lords upon an appeal from Scotland, that Court continued the injunction, although the defendants, as in this case, denied that in the particular manner which they intend to carry on their business, it would be a nuisance to the neighboring inhabitants. *Ibid.* And in the more recent case of *Swinton and others vs. Pedie*, (15 *Shaw & Denl. Sess. Ca.* 775,) the Lords of Session in Scotland refused to discharge the *ad interim* injunction, so far as to permit the experiment to be made, whether a slaughter house could be erected and conducted in such a manner as not to be a nuisance to the northern suburbs of Edinburg, in the manner suggested by the defendant, and the decision of the Court in that case was substantially sustained upon appeal to the House of Lords, in 1839. (*Maclean & Rob. Parl. Rep.* 1018, *S. C.*) *Ibid.*

The order of the Circuit Judge dissolving the injunction must be reversed.