Action by Ella M. Haynes, a daughter and heir of Elijah T. Sherman, deceased, against Catherine M. Sherman, widow and executrix, etc., of said Elijah T. Sherman, and others, to declare void a devise by said testator of certain lands, and for a partition or sale thereof. Judgment for plaintiff, and defendants appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*S. P. & J. McL. Nash,* for appellants. *Baldwin & Blackmar,* for respondents. *Chas. L. Jones,* guardian *ad litem* for infant defendants.

BARNARD, P. J. Elijah T. Sherman died in 1886, leaving a widow and six children. The youngest child would become of age in 1893. The testator left a will by which he made his widow sole executrix, with power of sale of all his estate. He disposed of all of his property in the following clause: "*First.* After paying my just debts I give and devise and bequeath all my estate, real and personal and mixed, and wherever situated, to my wife, Catherine M. Sherman, in trust, nevertheless, to have and to hold the same, and use so much of the income and principal as she may deem necessary for her support and the support of our children, until our youngest child now living shall arrive at the age of twenty-one years, or would arrive at that age if living; and, at that time, I order and direct my said estate to be divided among my legal heirs then living in such manner and proportion as they and each of them would be entitled under the laws of the state of New York." Under this clause, the wife did not take a fee. The case is entirely different from *Campbell* v. *Beaumont,* 91 N. Y. 464. In that case the property was all left to be used by the wife "for her sole use and benefit," and the remains thereof the testator expressed a wish and desire should be "received and enjoyed by her son." Here the trust is for the wife and family, with a devise over after the trust ceases, thus clearly showing an intent not to give the entire fee to the wife. *Wager* v. *Wager,* 96 N. Y. 164.

Does the clause in question create an illegal suspension of the power of alienation? The question is presented by the use of the words "or would arrive at that age if living," after fixing a limit to the time when the youngest child became of age. A trust limited solely by time is unauthorized and void, but the rule is equally well settled that an invalid limitation will not be allowed to invalidate the primary disposition of the will. An invalid limitation will be cut off from a trust which is not an entirety. The trust during minority is valid, and it may never happen that the child will die under age. The primary disposition is designed to protect the widow and children during the minority of this child. That the testator, in case of death, provided that the trust continued up to a date at which the child would reach his majority if he had lived, is not so interwoven with the valid trust as that it must fall with the illegal limitations incident to the trust. · *Tiers* v. *Tiers,* 98 N. Y. 568. There is nothing in this will except infancy which restrains alienation by the children. The gift to them is absolute, and the time when they are to take possession is only postponed. Each child has a vested remainder in fee, subject to be divested by death under age, and subject to the trust during the minority of the child named in the will. This trust will terminate when the child dies, if he should die under age. A limitation during minority is legal and valid. *Beardsley* v. *Hotchkiss,* 96 N. Y. 201. The judgment should be reversed, and a new trial granted, costs to abide event.

---

STILWELL *et al. v.* BUFFALO RIDING ACADEMY.

(*Supreme Court, Special Term, Erie County.* July, 1888.)

1. NUISANCE—INJUNCTION—USE OF ADJACENT PROPERTY—STABLES.

Plaintiff sought to enjoin the use of an adjacent building as a stable on the ground that they would be annoyed by offensive odors. The opposing affidavits tended to

show that the building was to be used by defendant in such a manner that plaintiffs would not be annoyed by offensive odors. *Held*, that the use of the building as a stable would not be enjoined until it was shown to disturb plaintiffs in the enjoyment of their property.

2. SAME—INJURY TO PROPERTY—DEPRECIATION IN VALUE.
   The injunction will not be granted on the ground that plaintiffs' property has been depreciated in value by the erection of the building, so long as it is not actually devoted to some use which may be enjoined.

3. SAME—DANGEROUS BUILDINGS—MUNICIPAL CORPORATIONS.
   Under a city charter and ordinances prohibiting the erection of wooden structures within certain limits, and declaring such buildings nuisances which may be abated, an adjacent owner cannot institute proceedings to abate, unless the right is conferred by the charter and ordinances. The removal of such buildings is in the discretion of the city council.

Motion to vacate an injunction restraining the use as a stable of a building erected by defendant on property adjoining that of plaintiffs.

*Adelbert Moot*, for plaintiffs.     *Frank Brundage*, for defendant.

DANIELS, J. The injunction was issued on a verified complaint of the plaintiffs and an affidavit setting forth that the building in question had been constructed in part of wood, in violation of the charter and ordinances of the city of Buffalo, and was designed for the keeping of horses therein, and the storage of hay, feed, and bedding for them, and that stalls had been constructed therein for 46 horses. The plaintiffs are the separate owners of three parcels of land fronting upon Utica street, and distant 90 feet easterly from the building of the defendant. It is apprehended by them, and the affidavits as well as the complaint tend to establish the fact that the apprehension may be well founded, that their dwellings upon these parcels of land may be endangered by fire in consequence of the defendant's building having been erected partly of wood, and from the storage of combustible material therein; and that the occupancy of their dwellings may be rendered unwholesome and uncomfortable by the odors emitted from the defendant's building, so far as it may be occupied as a stable for the horses owned and used by members of the club.

Upon this latter ground the papers were sufficient to entitle the plaintiffs to an injunction restraining such a use of the defendants' building as would probably result in this annoyance and disturbance to the occupants of their respective dwellings; for, in judgment of law, whatever may be obnoxious or offensive to the senses, either of sight, hearing, or smell, or which will render the enjoyment of life or property unwholesome or uncomfortable, is a nuisance, and a building erected upon the lands of another will not be permitted to be applied or used for any occupation or purpose resulting in the establishment of such a nuisance. Upon this subject the general principle of law has frequently been invoked, and uniformly applied, that the owner of adjacent property must so use it as not to be productive of injurious results of this description to the occupants of other property in the same vicinity. But the law does not attempt to protect persons in the occupancy and enjoyment of property from all annoyance or disturbances from exterior sources; and those which necessarily arise from closely-settled occupancy of cities or villages fall within this description. But where a building is erected and used which is productive of special annoyance and disturbance to others residing in the vicinity, or is injurious to the health or comfort of such occupants, there the law denominates it to be a nuisance, and will restrain the unlawful use of it by an injunction, as well as remunerate the party specially injured by awarding damages commensurate to the extent of the injury. But to erect and use a building for the stabling of horses, or even the business of a livery stable, is not, in judgment of law, considered in and of itself a nuisance liable to be restrained in this manner. This was held in *Dargan* v. *Waddell*, 9 Ired. 244. But it was held in *Coker* v. *Birge*, 10 Ga. 336, that a livery stable within 65 feet of an hotel, as it actually resulted in annoyance to the occupants of the lat-

ter building, should be regarded and held to be a nuisance, and restrained from the pursuit of that business by an injunction. That, however, was an extreme case, not justifying the continuance of this injunction; for the affidavits produced on behalf of the defendant tend to establish the fact that this particular building will be used, as it is proposed to be by the defendant, without causing disturbance, annoyance, or unwholesome odors to any of the occupants of adjacent property. And the affidavits upon this subject are so direct and complete as to overcome the general statement contained in the affidavits made on behalf of the plaintiffs that the use of this building in the manner in which it is proposed to be used may result in a nuisance to these occupants. As the proof in the case stands, this cannot be said to be established as a matter of fact, and until it shall be established an injunction cannot be maintained on this part of the case to restrain the defendant in the use and enjoyment of this property.

Cases have arisen in which injunctions have been issued and sustained prior to any actual disturbance from the intended future use to which adjacent property has been designed to be devoted. But that has been done only in the class of cases where it was entirely apparent, and no denial could change the fact, that the use of the property in the manner proposed would result in the establishment of a nuisance and the disturbance of neighboring occupants of property. That was specially held to be the fact of a slaughter-house, to which a building was designed to be devoted on the east side of Second avenue in the city of New York, in the case of *Catlin* v. *Valentine*, 9 Paige, 575. And so it was concerning a slaughter-house in *Brady* v. *Weeks*, 3 Barb. 157. And in *Peck* v. *Elder*, 3 Sandf. 126, the melting of animal fat in a populated neighborhood was restrained. And the same conclusion was deemed to be well founded as to a soap factory. *Howard* v. *Lee*, Id. 281. So it has been held to be a nuisance which will be restrained by injunction to discharge sawdust in a stream of water, rendering the water impure, and annoying and disgusting to persons having occasion to use it. *Lewis* v. *Stein*, 16 Ala. 214. And the same principle was maintained in *Chipman* v. *Palmer*, 77 N. Y. 51, where the discharge of sewage into a running stream was restrained by injunction. And in *Smiths* v. *McConathy*, 11 Mo. 517, a distillery, with sties in which hogs were kept, rendering the waters of a creek unwholesome, and emitting vapors disturbing habitable dwellings, was held to be a nuisance. In this latter class of cases the court assumed, as the necessary result of maintaining the establishment, that they would be nuisances, and there an injunction may be issued and maintained to restrain that use of the property prior to its commencement. *McKeon* v. *See*, 51 N. Y. 300; *Adams* v. *Popham*, 76 N. Y. 410. But this rule has never been carried so far as to restrain the future use of a building for the purposes of a stable, even where a large number of horses may be intended to be kept and maintained, without some well-grounded evidence that it will turn out to be a nuisance and disturbance to the occupants of neighboring property. This was examined upon an appeal in chancery in the case of *Luscombe* v. *Steer*, 17 Law T. (N. S.) 229, where it was held, as to the business of brick-making and brick-burning, which could not, under the circumstances, be determined necessarily to result in a nuisance, that an injunction could not be issued or maintained prior to such use of the property as would in and of itself constitute a nuisance. That is the case here. Nothing has yet transpired in any way producing disturbance or annoyance to the occupants of the plaintiffs' property. And from the affidavits which have been produced on behalf of the defendant it is probable that the building may be used, as it is designed it shall be by the defendant, without producing annoyance or disturbance to any of these occupants. And as long as that probability exists, and in the absence of any annoyance or disturbance having yet taken place, the case, upon this branch of it, is not one for an injunction. If an injunction is to be issued and maintained, that can only be done as to an

occupancy of the description proposed by the defendant, when it shall be found, and be capable of being proved as a matter of fact, that such use has become a nuisance or source of discomfort and disturbance to the occupants of this or other property. It cannot be made to stand upon the further fact that the plaintiffs' property has been depreciated in value by the erection of the defendant's buildings, as long as those buildings are neither in whole or in part devoted to any unlawful occupation subject to restraint by injunction.

A further ground upon which the injunction has been applied for and issued was that the charter and ordinance of the city had been violated in the erection of this building. By the charter of the city the common council has been authorized to prescribe the limits within which wooden buildings shall not be erected, and the manner in, and material of, which all buildings shall be constructed within such limits. And it has been declared that every building erected or placed contrary to any ordinance passed under this provision shall be deemed a common nuisance, and may be abated as such. Charter of Buffalo, 69, § 7, subd. 4. And in pursuance of this authority it has been enacted by the common council that no person shall, without its permission, erect, place, or remove any building, constructed in whole or in part of wood, within the limits of the city of Buffalo, as they are defined by section 2 of title 1 of the charter of the city. City Ordinances, 57, § 20. And that this building is within the limits so referred to is not a controverted fact in this case. The proof shows that the building has been constructed upon a stone foundation, with brick walls extending to the second floor. Above that, one story has been constructed of wood, and sheds upon the westerly side of the building appear to have been built of the same material. And as the building was constructed in this manner without the consent of the common council it has been erected in violation of the law, and is liable to be abated and removed as a nuisance, so far as this violation shall be found to extend. But this is a police regulation only, subject to the control, modification, and enforcement of the city. No remedy otherwise than through the intervention of the city authorities has been created or reserved to the owners or occupants of adjacent property. It is for the common council to exercise its judgment as to what shall be done. It may order the removal of so much of this building as has been erected with wood, or it may sanction the erection of that part of the building and legalize it by suitable action taken on its part. Which of these acts it may do is solely confided to its own election. No remedy because of the violation of the charter and ordinance in this respect is reserved to the adjacent owner; neither has he been permitted by anything contained in either the charter or the ordinance to restrain the erection or use of a building in this manner. This subject was generally considered in the case of *Moore* v. *Gadsden*, 93 N. Y. 12, where the owner of property had been held to be liable for the result of an accident occasioned by a failure to remove ice and snow from the sidewalk in front of it, in compliance with the directions of an ordinance of the city. And in conclusion, and the final decision of the case, it was held by the court that "the ordinance of the city is a police regulation, and is not of itself sufficient to give a cause of action to a party injured by an act in violation of its terms." Id. 17. Upon this part of the case, therefore, as well as the others, the plaintiffs have failed to entitle themselves to a continuance of this injunction, and an order will be entered vacating it; but, as the circumstances have been made to appear, it will be without costs.