The judgment is reversed, and the cause remanded.

---

**Ex parte BLUNDELL et al. (No. 11449.)**

Court of Criminal Appeals of Texas. Nov. 9, 1927.

Contempt ⚭54(4) — Where motion to cite relators for contempt appeared on its face to be without merit, court will not issue notice thereon.

Where motion to cite district attorney, sheriff, and constable for contempt alleged that they removed party, over protest of his attorney, from Caldwell county to Travis county for examination touching his sanity during and pending trial of issue in Caldwell county, but it did not appear removal was in violation of any court order, motion did not state facts showing that parties were in contempt of Court of Criminal Appeals, and, since it appeared on its face to be without merit, court would not issue notice thereon or take further cognizance of it.

Motion to cite Fred Blundell and others for contempt. Motion denied.

Wm. E. Hawkins, of Breckenridge, and Clarence J. Ginn, of Dallas, for relators.

A. A. Dawson, State's Atty., of Austin, for the State.

HAWKINS, J. A motion has been filed in this court praying that Fred Blundell, district attorney of the Twenty-Second judicial district of Texas, Walter Ellison, sheriff of Caldwell county, Tex., and Gus England, a constable of said county, be cited to show cause why they should not be held in contempt of this court. The motion alleges that said named parties removed one A. V. Millikin, over the protest of his attorneys, from Caldwell county to Travis county for examination touching his sanity during and pending a trial of that issue before Hon. M. C. Jeffrey, district judge of said district in Caldwell county.

From the facts stated in the motion it does not appear that relators have disobeyed any orders of this court or are in any way in contempt thereof. The motion appearing from its face to be without merit, we decline to issue notice thereon or to take further cognizance of it.

---

**LOGAN v. STATE. (No. 10675.)**

Court of Criminal Appeals of Texas. Nov. 16, 1927.

Appeal from District Court, Franklin County.

For former opinion, see 296 S. W. 315.

On second motion for rehearing.

MORROW, P. J. The application to file a second motion for rehearing is refused. The affidavit for the search warrant in the present case is not based on belief and undisclosed information, but states the facts upon which the affiants found their belief, which facts were deemed by the magistrate who issued the warrant to be sufficient to show probable cause, and the search warrant issued upon such cause was not invalid.

---

**BLACKBURN et al. v. BISHOP et ux. * (No. 2862.)**

Court of Civil Appeals of Texas. Amarillo. Sept. 28, 1927.

Rehearing Denied Oct. 26, 1927.

1. Appeal and error ⚭846(5)—Trial court's general judgment must be sustained, if warranted on any theory presented by evidence where no findings requested.

Where trial court, without jury, returned verdict on evidence, and no findings of fact or conclusions of law were filed or requested, verdict and general judgment must be sustained, if warranted on any theory presented by evidence.

2. Nuisance ⚭3(7) —Undertaking establishment is not "nuisance per se."

An undertaking establishment or funeral home is a legal business, and is not a "nuisance per se."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance per se.]

---

⚭For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction January 25, 1928.

**3. Nuisance ☞3(7)—Funeral home in residential section of city held nuisance.**

Erection and operation of a funeral home in residential section of a city, contiguous to, and adjoining other residence property, *held* under evidence a nuisance, and restraining defendant from conducting business thereof was proper.

**4. Appeal and error ☞1011(1)—Court of Civil Appeals cannot make findings contrary to judgment of trial court based on conflicting testimony.**

The Court of Civil Appeals cannot make findings contrary to judgment of the trial court which is based on conflicting testimony.

Appeal from District Court, Potter County; Reese Tatum, Judge.

Suit by J. H. Bishop and wife against E. M. Blackburn and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

C. B. Reeder, F. P. Works, Julius Dorenfield, Jr., and Alfred R. Lowey, all of Amarillo, for appellants.

Fletcher. & Bishop, of Amarillo, for appellees.

RANDOLPH, J. The following extended statement of the case is taken from appellants' brief, that a clear understanding of the issues presented by the pleadings and evidence can be had:

"Appellees filed their original petition, on which the case was tried October 8, A. D. 1926, against appellant and another, against whom suit was later dismissed, alleging:

"That appellant was the owner and in possession of certain property at 1816 Polk street, in Amarillo, Potter county, Tex., using same as a place in which to keep dead bodies and from which to bury the same, and that appellees owned and occupied as a home property adjoining appellant's said property and in close proximity thereto, and further alleging that said properties were located in the best and more select residential section of the city of Amarillo, appellees' said home being occupied by himself and family, consisting of a wife and three small children. That they had occupied said home for many years, maintaining same in good condition, beautifying same with trees, shrubbery, etc., further alleging that appellant's said property had for many years been a large residence, used by private families, but th'at appellant had converted same into an undertaker's, embalmer's, and funeral place, and established a dead house and morgue and place where dead bodies of the human race were cared for and prepared for burial, and where bodies of the unknown dead are kept for identification, and funerals held and dead bodies embalmed and kept for burial, and where great numbers of persons attend funerals, and where persons go for the purpose of locating and identifying their dead relatives. That divers and sundry malarious and stinking odors are emitted from said premises and fall upon appellees' dwelling house, which are extremely malodorous and nauseous. That the bodies of dead persons who die from contagious and malignant diseases are placed and kept in said morgue and dead house by appellant. That appellant keeps hearses and ambulances in which to haul and convey dead bodies and injured persons, and that same are operated at all hours of the day and night, making great noises, to the great distress and alarm of appellees, alleging that appellant's said place is about 30 feet from appellees' dwelling, with no obstructions between, appellant's place being on the north of appellees' home, and much north wind carries said odors and nauseous scents into their said dwelling. That appellees and their three small girl children are persons of refined and ordinary sensibilities. That said odors from said dead bodies are to a great extent infectious and contagious, and constantly subject appellees and their children to contagious and communicable diseases.

"Numerous flies, gnats, rats, mice, and other creatures that gnaw, eat, and communicate with dead bodies and go immediately onto appellees' premises and into their dwelling and about their closets, kitchen, and dining room, said flies alighting on their dining table at meal time, and carry and deposit upon their food and victuals germs and contagion, thereby subjecting appellees and their children to infection, whereby their health and happiness is impaired, and that all these conditions are threatened to be continued, and will be continued, as long as appellant is permitted to continue to so operate his said place. That said conditions are calculated to, and will, cause persons of ordinary temperament to be constantly alarmed for their health and safety, and constantly reminded of death and mortality, and create in such persons a morose disposition and state of mind, and cause great mental anguish and anxiety. That said things constantly remind appellees and their children of death and mortality, and will continue to cause them great mental anguish, depriving them of the enjoyment and comfort of their home; and that, by said noises and shrill whistles and sirens used by appellant on said dead wagons, hearses, and ambulances, appellees and their children will continue to be frightened and alarmed to their great discomfort, and impaired of their health and happiness. That funeral airs arise from appellant's said place and settle upon appellees' home. Great numbers of mourners for the dead attend said funerals and exhibit great sorrow, wailing, and distress of mind. That appellees' said children are five, seven, and twelve years of age and such constant reminders of death will impair their health. Appellees further pleaded city ordinance against establishment of such funeral places as being passed about September 1, A. D. 1926, and charged violation thereof. That, prior to the establishment of said burial place, appellees' property was of the market value of $30,000, which has been reduced thereby to $15,000, and claimed damage in the sum of $25,000 actual damages, and $5,000 exemplary damages, praying judgment for such damages with injunction, etc.

"Appellant filed first amended original answer December 6, 1926, consisting of general demurrer and special exceptions raising the unconstitutionality and unreasonableness of said alleged city ordinance, which were overruled. After general denial, appellant showed: That he had established, and was maint̲a̲i̲n̲

his said property a funeral home, in and from which funerals were conducted in a homelike, quiet, and orderly manner, without disturbance or annoyance to any one. That only small funerals attended by comparatively few people are and will be held in said place, all large and more numerously attended funerals being held in churches and at the homes of deceased persons. That said home is maintained in a large residential building, far back from the street, and well removed from the line and nearest portion of appellees' home or any other adjoining private residential property, same being located near the alley back of said property, and said building being constructed mostly of stone, and partly surrounded by trees and shrubbery, by which same is rendered quiet and peaceable, and not easily within the view of passersby, and that the small funerals or other attentions given the dead in said place will impress them only incidentally. That said funeral home is the residence and home of appellant and his family, consisting of a number of children of different ages, and a young lady kinsman, and that his assistant, with his wife, also reside in said building as a home, using same for all the purposes of a home. That the handling of the bodies of the dead and funerals are, and will be, conducted quietly and orderly, and with due regard for the feelings and sensibilities of others. Special denial was made of malodorous or stinking odors being emitted from said premises, or that such enter, or will enter, the dwelling of appellees therefrom, but that said place is, and will be, kept in a most sanitary, healthful, and unobnoxious condition, free of all such offensive odors. He specially denied that any contagious or malignant diseases or the germs of any such are, or will be, permitted to enter such place, and that the bodies of persons dying from contagious diseases will be thoroughly and completely relieved of any such contagious or malignant diseases and the germs thereof, by effective chemicals, and that such bodies will enter said place only after being so cleansed, and in hermetically sealed caskets, without possible danger of hurt to any one. That hearses will not be operated about said premises at night, except in rare instances, and that ambulances will enter and leave said premises in a way not to disturb appellees. That appellant was prepared to, and would immediately, erect solid wall fence of sufficient height to obstruct the view between said properties, if appellees so desired, and he offered and tendered to build such fence along said division line along such portion thereof as appellees might designate as being most desirable to them. That already a reasonable lattice fence about six feet in height was on said line a portion of the way. That solid fence had already been built along the west line of appellant's property across the rear end thereof, and the space between said solid fence and the west wall of said funeral home had been roofed in across the entire west portion, said roofed in structure connecting at the south with servant's house at the southwest corner of said premises, all surrounded by solid walls, and only entered by solid doors. That the unloading and handling of all dead bodies will be within said last mentioned inclosure, entirely covered and roofed over, and in the rear of said stone building, said unloading place being so situated as not to permit of any sounds or unpleasant noises

to be heard about appellees' premises. That the front portion and approaches to said funeral home are partially screened from view toward appellees' property by trellises, screens, frames, vines, shrubbery, etc. That caskets containing bodies of the dead will be loaded from the north side of the main building, and attendants at funerals will enter and be reloaded in automobiles on the north side of said building opposite from appellees' property, and invisible therefrom, and practically invisible from the street when appellant's contemplated improvements are completed. That the families and friends attending funerals will be unloaded from their cars under said roofed, inclosed structure, and will re-enter their cars near the northwest corner of the main building without being in view of appellees' property, a sketch of said properties being attached and made part of appellant's pleadings. Appellant specially denied that flies, gnats, rats, mice, or other creatures that gnaw, eat, or communicate with dead bodies are or will be permitted in any way to come in contact with dead bodies in said funeral home, but that such bodies will not be exposed to such things, but will be kept safely incased and protected therefrom, and, in addition, all openings in said building securely screened, and said premises kept clear and free of such creatures, and in no event will they enter appellees' premises from said funeral home, scientific and effective methods being used to keep said premises free from such impurities and obnoxious creatures as are portrayed in appellees' petition, said funeral home also being kept clear and free from disease germs that might endanger the health or life of appellees or any one. That appellant has great respect for the sensibilities of appellees and their families as well as all persons who may be in said funeral home from time to time, and will keep same sanitary, healthful, free from obnoxious odors, insects, or animals, and will carefully guard the health of all such persons. He further specially denied great noises or shrill whistles from hearses or ambulances about said property, and that neither appellees nor their children will have occasion to be afraid, alarmed, or discomforted on account of such things, much less will their health or happiness be disturbed, and that the slight reminders of death that may come to appellees or others from said funeral home will not be unreasonable or hurtful. That solid walls are to be built both from the north and south lines of appellant's property to driveways near said lines, and then arches are to be built over said driveways from near the southeast and northeast corners of the main building, and by said walls and arches, with the gates through same, all of said premises west of said last-mentioned walls and archways will be practically excluded from view from the south and east and from appellees' property. That most funerals will be held in the northwest corner room of the main building, and only in case of said room overflowing will any of those attending funerals occupy the northeast corner room, and in all funerals the caskets will be placed near the west wall of said northeast corner room, and all the singing and music be from a small room adjoining said northeast corner room on the south, and almost in the center of said heavily built stone building, and all noises of music and oth-

erwise thereby removed from appellees' property, and so placed as to in no wise disturb them.

"Appellant especially denied the binding force of the city ordinance presented, showing the same to be unconstitutional, unreasonable, and unenforceable, in that his business is not a nuisance, and said ordinance undertakes to deprive him of the unlawful use of his property for conducting a lawful business in a lawful and proper way without legal determination or adjudication and without due process of law, and was also an attempt to so do after he had acquired said property and established said business. That the proper care for the dead requires and demands such a funeral home in Amarillo, a populous and numerously inhabitated growing city, such institution being necessary and proper. Special denial of grounds for exemplary damages was made, in that the location of said funeral home was selected after careful and extensive investigation as being a location both from a standpoint of accessibility and such location being comparatively secluded and withdrawn as far as possible from contact with public or other properties.

"Appellant especially showed: That the preparatory room where all embalming work is done and bodies prepared for burial is in the southwest room of said large stone building, and that the center west room of said ground floor is a dressing room where bodies are dressed after being embalmed and prepared for burial, said rooms being plastered, closely built, with no openings to the south toward appellees' property, the only outside opening in said preparatory room being a small window on the west, and the only opening in said dressing room being a door at the west, both openings under said roofed inclosure. That appellant and his family reside in the second story of said building, their dining room and kitchen pantry being over said preparatory or embalming room, and nothing offensive reaching either said pantry or said dining room, much less appellees' premises. That, at the time of said injunction, appellant was changing and developing said property into a complete, modern, and inoffensive modern funeral home, he having before handling dead bodies from said home inclosed the back portion of said premises, and so surrounded said preparatory and dressing rooms, and securely screened all openings with fly-proof screen wire, and he especially denied that any of the obnoxious or hurtful things have occurred or will occur as alleged by appellees. He further explained Exhibit A of his pleading—that the portion thereof colored in green showed the changes then completed, and the portions in red the changes to be made in the near future, and that, when completed, there will not be a door or window opening from the first floor of said premises to the south or toward appellees' property, and that the east portion of said premises will be largely screened and shielded by frames, trellises, and shrubbery, and that by said solid partition, fences, and walls said properties will be completely separated, and the view of appellees fully excluded from said funeral home and the doings in same. That appellant was only awaiting an indication from appellees as to kind of separating wall or fence between their properties most agreeable to appellees, for the building of same, he especially denying the need of any special wall, however, but offering to maintain same for their further protection, if desired by appellees.

"Trial was had without jury, and, on December 9, 1926, judgment rendered for appellees perpetually enjoining appellant from conducting his said business, and awarding appellees $500 actual damages."

We will not attempt to state the evidence here, but will only make such statements as is necessary to throw light upon the questions discussed by us.

[1] The trial court, without the intervention of a jury, returned a verdict upon the evidence. No findings of facts or conclusions of law were filed by him, and none were requested; but, a general judgment perpetuating the injunction, making it permanent (but suspending its operation on appeal on the filing of bond by appellant), such verdict and judgment must he sustained by us, if the law upon any theory presented by the evidence warrants the trial court's judgment. Moore v. Rogers, 84 Tex. 1, 2, 19 S. W. 283; Harris v. Monroe Cattle Co., 84 Tex. 674, 676, 19 S. W. 869; Jordan v. Brophy, 41 Tex. 283, 284; Bailey v. White, 13 Tex. 114, 118; Gilliard v. Chessney, 13 Tex. 337; McFarland v. Hall, 17 Tex. 676, 690. This rule is binding upon this court. Kempner v. Jordan, 7 Tex. Civ. App. 275, 26 S. W. 870.

The appeal is submitted to this court upon the following propositions of error:

"There being no proof that appellant's funeral home was improperly or illegally conducted, same was not a nuisance, and should not have been enjoined.

"The mere aversion and unpleasant feelings of others toward a funeral home and place where dead bodies are kept do not constitute appellant's funeral home a nuisance, in the absence of allegation and proof of improper conduct of said business or illegal use of appellant's funeral home property.

"The proof showing without conflict that appellant conducts his funeral home, a lawful business, properly, legally, scientifically, and with due regard to the rights of others, same should not be enjoined as a nuisance, although others may have an aversion to and an unpleasant feeling as to such place and business.

"It being shown without conflict that appellant purchased and used his property as a funeral home, conducting a legal business in a legal manner in good faith, and with proper regard to the rights and interests of others, the trial court erroneously held such business to be a nuisance, and improperly enjoined same.

"This assignment is submitted as a proposition as follows: 'The record showing without conflict that defendant's funeral home business is a legitimate, legal, and necessary business conducted by him on his own property in a legal, proper, approved, and scientific manner, with due and proper regard for the rights, interest, and comfort of others, the trial court erred in holding same to be a nuisance, and in attempting to perpetually enjoin same.'

"This assignment is also presented as a prop-

osition, to wit: 'The trial court erred in holding defendant's funeral home to be a nuisance per se, because no facts were alleged, and no proof made, that same was a nuisance from the manner or method in which same was conducted.'

"Reduction in value of property occasioned by common aversion to the proximity of funeral homes arising from such reminders of mortality as may be produced is not sufficient to render the funeral home, legally, and properly conducted, a nuisance, it being necessary that the proof go further and establish actual physical injury; that such reminders of mortality will produce actual physical injury to normal people; that the vitality of normal people will be lowered thereby to the extent of rendering them incapable of resisting disease, and less capable of recovering when afflicted."

These propositions present the questions of whether or not a nuisance is created by reason of the erection and operation of a "funeral home," in a residential section of the city, and contiguous to and adjoining the home of appellees. No decisions of our Texas courts directly passing upon the location and operation of an undertaking establishment in a residential district have been called to our attention, and we have been unable to find any, but we do find cases discussing the doctrine of the creation and operation of nuisances as applied to cemeteries, livery stables, etc., which present general principles which we think are applicable, in part, at least, to the case at bar, and we will discuss some of those cases, and will also discuss or cite authorities from other states bearing directly upon the questions here in issue.

The proposition of appellant that the trial court held that the funeral home was a nuisance per se is not supported by the record. The judgment rendered by the trial court is a blanket judgment, a general conclusion upon the whole case in which no special conclusions of law are stated. Whatever transpired in the trial court that is not embraced in the record herein filed can and will have no weight with us. A nuisance, to furnish a right of action which will justify the interposition of courts of equity, is one where there is "such an injury as from its nature is not susceptible of being adequately compensated by damages at law or such as from its continuance or permanent mischief must occasion a constantly recurring grievance which cannot be otherwise prevented but by an injunction." 2 Story's Eq. Juris. p. 228, § 925.

As to what constitutes a nuisance, Cyc. lays down the rules:

"As a general rule, every unlawful use by a person of his own property in such a way as to cause material annoyance, discomfort, or hurt, to other persons, or the public generally, and even enjoyment by one of his own property which violates the rights of another in an essential degree, constitutes a nuisance.

"A fair test as to whether a business, lawful in itself, or a particular use of property, constitutes a nuisance, is the reasonableness of conducting the business, or making the use of the property complained of, in the particular locality and in the manner and under the circumstances of the case, and where the use made of his property by the person complained of, is not unreasonable, it will not, as a rule, be enjoined, nor can a person complaining thereof recover damages. But, when it is established that a person is creating a nuisance, the mere fact that he is doing what is reasonable from his point of view constitutes no defense.

"The locality is to be considered in determining whether there is a nuisance, for what might be a nuisance in one locality might not be so in another. Thus, a business which might be perfectly proper in a business or manufacturing neighborhood may be a nuisance when carried on in a residential district. * * *" 29 Cyc. 1156, 1157.

The cases cited by appellant's brief do not, in our opinion, settle the issues presented in his favor in this case, for the reason that they do not cover the particular questions we are now called on to decide. Considering some of the leading cases relied on by appellant, our conclusions as to what each case holds will be stated and the decision reached as to whether the cases so cited establish the rule as claimed by appellant.

Dunn v. City of Austin, 77 Tex. 139, 11 S. W. 1125. This case was an attempt on the part of the complainants to enjoin the operation of a cemetery. Our Supreme Court held that the petition was defective in failing to allege such facts as show with reasonable certainty that a nuisance will be brought into existence, and that the petitioner will suffer injury thereby, unless the relief prayed for is granted, in this: There is no averment whatever as to the contemplated mode of sepulture, and the entire basis of the claim that injury will result from the addition to the cemetery in use is found in the fact that the addition is somewhere in the vicinity in which petitioners and others own property and reside. It is not averred that any part of the lands owned by complainants are even contiguous to that intended to be added, etc. This seems to be the gist of the decision, and was the very question presented to the court, but, the Supreme Court goes further, and announced some general rules as being applicable to the case, which substantially are as follows, quoting from Rosser v. Randolph, 7 Port. (Ala.) 239, 31 Am. Dec. 712:

" 'When the matter complained of is not in itself a nuisance, when it is not in its very nature hurtful to others, when it does not of necessity threaten to impair materially the health and comfort of those who may live near it, and the fact that it is a nuisance has not been established at law, the court abstains from interference, unless a case of pressing necessity is shown by the bill and by the proof.' "

Further, in that case the Supreme Court holds that a cemetery is not a nuisance per se, but that from its locality or manner of use it may become a nuisance, and also lays down this general rule for our guidance:

"Relief is sought against a threatened injury, and there is no doubt of the power of a court of equity to grant such relief when it is made clearly to appear that without it irreparable injury will result. * * * A loss caused by an unlawful act is, within the meaning of the law, an injury for which damages may be recovered, and when through such an act threatened it is made to appear that a nuisance will be created, the act may be prevented by injunction; but a loss resulting from an act lawful within itself furnishes no ground for the recovery of compensation nor for restraining the actor from the exercise of a legal right.

"The use of grounds for a cemetery, either public or private, is not unlawful; hence when so used no nuisance is created, unless from the manner of the use the atmosphere surrounding other property be rendered unwholesome or offensive, water in wells, springs, or reservoirs be injured by poisonous matter exhaled or otherwise thrown out, or unless the soil or other property through such use becomes impregnated with unwholesome or noxious matter from which injury results. * * *

"It may be that proximity to a cemetery will render property less valuable than it would otherwise be, but this furnishes no reason why the owner of ground so used should be restrained from continuing the use so long as that does not create a nuisance."

Our Supreme Court in the above case emphasizes the question of the sufficiency of the petition in the case of Jung v. Neraz, 71 Tex. 396, 9 S. W. 344, discussed herein later.

In the case of Boyd v. City of San Angelo, 290 S. W. 833, the Court of Civil Appeals does not state the grounds which appellants set up as constituting the proposed plant a nuisance, and state that the court had reached the conclusion that appellants had failed to introduce sufficient evidence as a matter of law to support a finding that the sewerage disposal plant would constitute a nuisance, but it is held that injunction is the proper remedy to prevent the creation of a nuisance, and approves the definition of nuisance given in 29 Cyc. 1153. It is also held in this last case that, while such a plant is not a nuisance per se, its location and manner of operation must determine the matter.

The case of Hamm v. Gunn, 51 Tex. Civ. App. 424, 113 S. W. 304, was disposed of by the court's holding that a gin is not per se a nuisance, and that the evidence wholly fails to show that it was operated in a manner reasonably calculated to materially affect the comfort or health of a person of ordinary sensibilities.

In the case of Gilbert v. Showerman, 23 Mich. 448–455, the Supreme Court of that state, speaking by Chief Justice Cooley says:

"Even the most offensive trade, as we have seen, is allowed to be carried on in a remote place; and this means not a place remote from all other occupations and trades, but remote from such other occupation or trade as would be specially injured or incommoded by its proximity; in other words, in a place, which, in view of its offensive nature, is a proper and suitable one for its establishment. The most offensive trades are lawful, as well as the most wholesome and agreeable; and all that can be required of the men who shall engage in them is, due regard shall be had to fitness of locality. They shall not carry them on in a part of the town occupied mainly for dwellings, nor, on the other hand, shall the occupant of a dwelling in a part of the town already appropriated to such trades, have a right to enjoin another coming in because of its offensive nature. Reason and a just regard to the rights and interests of the public, require that in such case the enjoyment of pure air and agreeable surroundings for a home, shall be sought in some other quarter; and a party cannot justly call upon the law to make that place suitable for his residence which was not so when he selected it."

In the case of Jung v. Neraz, supra, suit was brought to enjoin the establishment of a cemetery upon land situated in front of, contiguous to, and so near, the plaintiff's residence that a cemetery there would render the houses of petitioners unfit for habitation, and thereby destroy their usefulness and value; that the petitioners had several water wells upon their lands; and that the cemetery was situated upon land which would drain onto and through their lands into said wells; that the interment of dead bodies would in fact poison and injure said wells, and injure petitioners' health by the foul odors arising from the decomposed bodies; that the establishment of a cemetery and burying dead bodies thereon would render petitioners' homes uninhabitable. Demurrers were sustained to this petition and judgment rendered for defendant. The Supreme Court by Judge Acker of the Commission of Appeals, passing upon the action of the trial court in sustaining the demurrers and holding the petition insufficient, held:

"Each and all of the appellants were in possession of the land and premises to be injuriously affected by the proposed location of the cemetery, residing thereon and using water from the wells situated thereon. Each had the right to the enjoyment of his possession, and all had a common interest in protecting their possessions against an act that 'worketh hurt, inconvenience or damage thereto.' * * * Without here reciting the allegations of the petition, we deem it sufficient to say that, in our opinion, the petition states a case that entitles appellants to the relief sought. Burkett [Burditt] v. Swenson, 17 Tex. 501 [67 Am. Dec. 665]; Ellison v. Commissioners [58 N. C. 57, 75 Am. Dec. 430]; Clark v. Lawrence [59 N. C. 83, 78 Am. Dec. 241]; Barnes v. Hathorn, 54 Me. 124."

In the Burditt Case, cited in the foregoing opinion, an injunction was sought to restrain

the operation of a livery stable upon a lot adjoining petitioner's store. The petition alleges that the defendants have introduced into said stable numerous horses, mules, and jacks, which they continue to board and keep; that the main and only entrance to said stable is immediately upon the margin upon which petitioner's store fronts, and that such animals, and also wagons and carriages, pass over the sidewalk into said stable, blocking up the passage to said store, and diverting his customers therefrom; that great clouds of dust are thereby caused to be blown into his store, to the great damage of his goods; that large quantities of manure and other filth are taken and deposited in the back part of the stable, immediately in front of some of the windows of the store; that said manure and filth has already accumulated to such an extent that it now causes an unhealthy and disagreeable effluvia,· exceedingly offensive and prejudicial to the petitioner and those under his employment; that the defendant has no fireplace in said stable, but has heretofore built fires on the dirt floor of the stable, etc. On the trial of the case, the jury found a general verdict for the plaintiff, and the trial court thereupon entered his decree enjoining the defendant from in any manner entering said stable through the front entrance with any animals or vehicles, and from in any manner obstructing said sidewalk with any such animals or vehicles, and from keeping said stable in an uncleanly and filthy manner, and forbidding defendants from allowing any accumulation of filth and manure to remain· longer than 24 hours after one day's accumulation, also from permitting any opening or aperture in the north' wall of said stable, and that same be entirely closed and made tight, and also enjoined them from using fire except such as are kept in stoves, or fireplaces; in other words, the trial court permitted the running and operation of said stable under regulations prescribed in the judgment. The Supreme Court, passing upon the disposition of the case by the trial court, held that the pleadings and evidence were sufficient to entitle the plaintiff to an injunction, and that the trial court erred in failing to award the plaintiff a peremptory injunction, and say, in part:

"After the institution of this proceeding, the stable appears to have been kept in a less annoying manner than formerly, and the witnesses say, as well as stables are usually kept. Yet the amended petition charges it to have been still a nuisance, and under the pleadings and proof, the verdict establishes that it was such, as well after as before the partial dissolution of the injunction; or the partial injunction decreed. The finding of the· jury is inconsistent with any other conclusion than that they believed the stable to be a nuisance, as then kept. For it was returned under the charge of the court, to the effect that a livery stable is not, in itself, a nuisance; but whether it be so or not will depend·upon the manner of keeping

it, and other circumstances. It would appear then, that the only decree which could be legally rendered on the verdict, was a perpetual injunction. * * * They [livery stables] are not necessarily so, but may become so; and we think the proof abundantly shows that that of the defendants was in fact so, by reason of its locality and construction, as well as the manner of keeping it. * * * The principle upon which an injunction is allowed in such cases is, that the injury is such, as, from its nature, is not susceptible of being compensated in damages. It is a constantly occurring grievance, from day to day, and year to year, which, in its nature, is incapable of being estimated in dollars and cents; and cannot be prevented otherwise than by an injunction. * * * The maxim of the law is, use your own rights and property so as not to injure that of another. The legal proposition, consequently, being, that if one do an act in itself lawful, which being done in a particular place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent on him to find some other place to do that act, where it will not be injurious to his neighbor. (3 Bl. 218), [and] it was the duty of the defendants to find some other place for their livery stable, where it would not be so injurious or offensive as to deprive others of their accustomed and rightful use and enjoyment of their property. We are of opinion that the judgment be reformed, so as to render the decree which the court below ought to have rendered; that is, that the injunction be made absolute and perpetual."

[2, 3] From these authorities we arrive at the following conclusions:

(1) That an undertaking establishment or funeral home is a legal business, and that it is not a nuisance per se.

(2) That whether or not it is a nuisance as operated depends largely upon its location.

(3) That, at best, as shown by the evidence, it is a constant threat of disease or sickness to those whose homes are adjacent thereto, the appellees in this case, and, in so far as the very business is concerned by reason of the method of its operation, it should not be permitted to operate in the residential section of the city.

(4) That it appears from the evidence that there is a constant danger to plaintiffs' family from infectious and contagious diseases being carried to the plaintiffs' residence by such carriers as mice, rats, insects, and even the very air.

[4] It is true that these findings are upon conflicting evidence, but they are authorized by the judgment of the trial court, and we have no jurisdiction to make findings contrary to such judgment of the trial court, which is based upon a conflict of testimony.

From a photograph in the record, it is shown that the plaintiffs' home is situated on a lot 92 feet wide, and that the defendant's funeral home is on the adjoining lot, which has a frontage of 125 feet, the plaintiffs having resided upon their lot and made it their home since 1916. The defendant at the time

of the trial had been occupying the premises adjoining for almost two months. The buildings in part composing the funeral home come within 25 or 30 feet of plaintiffs' north property line.

It further appears from the evidence of the physicians, Dr. Lindsey and Dr. Marsalis, that germs of diseases are not only carried by rats, mice, and flies, but that they can be carried through the atmosphere for at least 100 feet distance.

It is true that the defendant testified that he has tried to make a real home out of his undertaking establishment, and has and does everything as scientifically as possible to keep his premises clear and free of any liability to carry disease germs, but the evidence nevertheless shows that it is not only possible, but probable, that disease germs may be carried off the premises by one of the agents named above.

The testimony also shows that the operation of such an establishment in close proximity to the residence of plaintiff and his family, where they are compelled to see the going and coming of the ambulances and hearses, conveying the dead, has the effect of destroying the peace and comfort of the family of the plaintiff, and of preventing the enjoyment of their home, as they are entitled to do. It may be that soldiers in time of war, and that those who have devoted their lives to the handling and care of the dead, may become so hardened to death scenes that they are not affected by them, but the normal man, and especially women and children, who are of more delicate fiber, and temperamentally subjected to such influences, are rendered unhappy and disturbed by being brought in contact night and day with death. It becomes so distressing and disagreeable that their peace and comfort, to say the least, is seriously impaired, and this is true without reference to any idea of the appearance of the spirits of the dead. Normal people cannot look upon the dead without a feeling of repugnance and aversion, and to have death before their eyes constantly produces a depression that destroys their peace of mind.

The principles laid down above, to some extent, might be applied to people engaged in their daily avocations in their places of business, but the writer is of the opinion that if they do apply, under existing business conditions, it is in an infinitesimal degree as compared to the depression and distress inflicted on those who have to submit to these things in their homes.

During all recorded time, man has enveloped the home with a sanctity that is not given to any other place on earth. It is true that the Constitution of our state has created a business home, but such business home is only created and protected that the living for the family might be assured. But the home of his family is sanctified by the suffering of the mother in bringing his children into the world, by her anxiety in the care for the development of her little brood; it is her kingdom. And the man, tired and worn with his day of toil, in his business, profession, or labor, returns to his house at the close of day with the feeling that it is his city of refuge, where none can "molest him or make him afraid."

Always "home" has meant peace and contentment, and man's rest under his own vine and fig tree are symbolical of such a condition. Holy Writ gives us such a picture when it says: "Judah and Israel dwelt safely, every man under his vine and under his fig tree from Dan even unto Beersheba, all the days of Solomon." 1 Kings 4: 25.

For many reasons the broadest protection has been afforded by law to preserve the immunity of the home from distresses and vexations of life, and to protect the happiness and contentment of the family, and such home should not be destroyed by the demand of a legal business in a residential district, the legal operation of which, it 'is made to appear from the evidence in this case, has created, and is creating, unsupportable conditions depriving the appellees and their family of the ability to enjoy their home in peace and comfort, and, the trial court having passed upon the case as a whole, this additional ground for his judgment is deducible from the evidence.

Supporting that judgment, in addition to the authorities discussed above, we cite: Dargan v. Waddill, 31 N. C. 244, 49 Am. Dec. 421; Coker v. Birge, 10 Ga. 336; County of Los Angeles v. Hollywood Cemetery, 124 Cal. 344, 57 P. 153, 71 Am. St. Rep. 75; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825; Everett v. Paschall, 61 Wash. 47, 111 P. 879, 31 L. R. A. (N. S.) 827, Ann. Cas. 1912B, 1128; Cunningham v. Miller et ux., 178 Wis. 220, 189 N. W. 531–539, 23 A. L. R, 739; Tureman v. Ketterlin, 304 Mo. 221, 263 S. W. 202, 43 A. L. R. 1155; Ross v. Butler, 19 N. J. Eq. 294, 97 Am. Dec. 654; Streett v. Marshall (Mo. Sup.) 291 S. W. 494.

Taking the view of this case as above indicated, it is unnecessary for us to discuss the effect of the city ordinance passed by the city of Amarillo after the location and opening of defendant's funeral home.

The judgment of the trial court is affirmed.